UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION (LAFAYETTE)

| | |
|---|---|
| THE LAFAYETTE LIFE INSURANCE COMPANY, MERCY RIDGE, INC., AMERICAN BANK, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MENASHA, WISCONSIN, a municipal corporation, MENASHA UTILITIES, and MENASHA STEAM UTILITY,<br><br>Defendants. | Case No. 4:09-cv-0064-TLS-APR |

**RESPONSE TO DEFENDANTS' MOTION TO STAY STATE DISCOVERY PROCEEDINGS**

**INTRODUCTION**

Defendants, City of Menasha, Menasha Utilities, and Menasha Steam Utility (collectively "Menasha") have filed a cursory and rather misleading request with this Court to stay what they cavalierly refer to as "State Discovery Proceedings." Given the complete lack of legal support for its position, Menasha's only motivation for filing this Motion must be to further frustrate the efforts of American Bank (the party initiating the Wisconsin mandamus action) in its efforts to ascertain the truth behind an apparently egregious scheme that has cost the citizens of Menasha tens of millions of dollars in losses.[1] There is absolutely no proper reason that Menasha's request for a stay of the Wisconsin Court's Order directing Menasha to produce *public* records should be granted. Thus, Plaintiffs in this lawsuit share in Menasha's request for a quick and decisive

---

[1] Given the complete lack of argument or support set forth in Menasha's Motion, it is anticipated that, to the extent new arguments are not waived, a surreply may be necessary to address arguments Menasha failed to include in its original Motion.

ruling - a prompt denial of the Motion to Stay, a decision that upholds the law and serves the Wisconsin Legislature's clear and absolute mandate for ready and open access to *public* records.

There are a few fundamental issues that reveal the meritless and illogical position of Menasha even before turning to the compelling legal reasons that Menasha's Motion to Stay should be denied. First, it is unquestioned that the documents that American Bank has requested are *public* records. The Wisconsin Court found them to be public records and without hesitation granted the Mandamus Order sought by American Bank. Simply put, public records of this nature are akin to books available in the public library. The Wisconsin Legislature has made clear that open access to public records is a fundamental right and Wisconsin Courts have not looked kindly on any governmental attempt to deny its citizenry of this right. WIS. STAT. § 19.31. Indeed, the Wisconsin Attorney General has guided municipalities to produce documents in ten (10) days. *See* Wis. Dept. of Justice Public Records Law Compliance Outline at 10 (Aug. 2009) (http://www.doj.state.wi.us/dls/OMPR/2009OMCG-PRO/2009_Pub_Rec_Outline.pdf). If Menasha finally produces the documents on February 24, 2010, as ordered by the Wisconsin Court, it will have been nearly one hundred fifty (150) days since these public records were first requested.[2] This Motion is quite simply another delay tactic by Menasha with the scant hope that it will be able to continue concealing the truth about its actions from public scrutiny.

Second, there has been no mention of the possible purposes why American Bank or any other citizen of Wisconsin might desire to see the public records that should tell the tale of why Menasha's foray into the steam utility business turned disastrous. Menasha unconvincingly asserts that the only purpose American Bank has sought the public records is for use in this

---

[2] In fairness to Menasha, recognizing the clear right to obtain public records, Menasha began to produce some documents in December until it changed its mind and decided to use this lawsuit as a strategic effort to block or delay access to the public. Rather than being a display of good faith, however, this must be viewed as an act of defiance against the State's authority.

lawsuit. In fact, the Court should take notice that there is pending before the citizens of Wisconsin a proposal to sell a portion of public assets to Wisconsin Public Power Inc. ("WPPI") in a transaction valued in excess of $18 million dollars. That or any one of a dozen other reasons unrelated to this lawsuit could be the motivation to review these public records. It would be patently absurd to bar an individual or entity from obtaining *public* records for purposes other than this lawsuit, simply because it is also exercising a legal right to sue under other state and federal laws.[3]

Equally important, however, is that the motivation or intended use of the public records is irrelevant. Wisconsin's Legislature, as with most, if not all, other federal and state legislatures, does not require any stated purpose for a public records request. Again, such a request is similar to obtaining and reading a book at the library, checking a deed or plat plan in the county recorder's office, reading a court file, or looking at public internet websites. It would simply be erroneous to refer to any of this as "discovery." The whole purpose of declaring records to be "public" is to place them on display for the public to review. The only reason that a mandamus action was filed was the complete refusal by Menasha to fulfill its obligations under Wisconsin law.

A final threshold matter is that no discovery has been served by the Plaintiffs in the present case, in the present case, notwithstanding valid arguments that discovery would be entirely permissible at this time. Therefore, it is not proper legally or factually to conclude that Plaintiffs are somehow circumventing a yet-to-be imposed stay in this case to obtain discovery.

---

[3] There is also no dispute that Menasha is in default in an amount exceeding $22.5 million dollars of bond anticipation notes.

**ARGUMENT**

A.  **A Public Records Request Does Not Constitute "Discovery" and Is Not Subject to Prohibitions Against Discovery Proceedings in Litigation**

Defendants' Motion to Stay should be denied because Defendants base their entire argument on the incorrect assertion that Plaintiffs have conducted "discovery" by making a public records request under Wisconsin state law. In fact, both Wisconsin courts and federal courts have consistently held that a request for public records, under either state or federal laws, simply does not constitute discovery and is not subject to any prohibitions on discovery in pending litigation.

In interpreting their own statute, Wisconsin courts have uniformly held that requests under the very Public Records Law at issue in this case are neither "discovery" nor are barred by prohibitions on discovery in pending, related litigation. *See, e.g., State ex rel. Lowe v. Frascht*, 735 N.W.2d 192, *3 (Wis. Ct. App. 2007) ("the rights created under the open records law are entirely different from…discovery rights"); *State ex rel. Lank v. Rzentkowski*, 416 N.W.2d 635, 637-38 (Wis. Ct. App. 1987) (ruling that public records request made by plaintiff to defendant public authority was not discovery and was thus not barred by prohibition against discovery in related litigation between the parties). Wisconsin is not aberrational. Other state courts have had little trouble in reaching the same result. *See, e.g., Quinn Constr. Co., LLC v. King County Fire Prot. Dist. No. 26*, 44 P.3d 865 (Wash. Ct. App. 2002) (ruling that stay of discovery in related litigation did not bar plaintiff from obtaining public records from defendant under the Washington Public Records Act); *accord Kentner v. Ind. Pub. Employers' Plan*, 852 N.E.2d 565, 575 (Ind. Ct. App. 2006); *Kentucky Lottery Corp. v. Stewart*, 41 S.W.3d 860 (Ky. Ct. App. 2001). Because the Wisconsin Legislature has said there is a right to get public records, and the

Wisconsin Court has interpreted Wisconsin public records laws to say a request thereunder is not discovery, there is no basis, legal or otherwise for this Court to interfere.

In fact, federal courts have generally agreed that a public records request is not discovery. Courts have long held that discovery and public records requests are separate and distinct methods of obtaining information, and that they should not be considered as indistinguishable. In the landmark decision *NLRB v. Sears, Roebuck & Co.*, the Supreme Court stated that public records requests by their very nature are "fundamentally designed to inform the public about agency action and not to benefit private litigants.  Accordingly, [in determining whether documents should be produced pursuant to a FOIA request,] we will not refer again to the [the requester's] underlying [litigation]."  421 U.S. 132, 143 n. 10 (1975).  This distinction has since been relied on by federal courts in specifically holding that discovery and FOIA "provide two independent schemes for obtaining information."  *See United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977) (citing *NLRB*, 421 U.S. at 143 n. 10).  In further explaining this distinction, the Fifth Circuit has also even explicitly warned that parties and the courts should not interpret "the existence of the discovery provision of the Federal Rules [to] preclude[] resort to the FOIA as an alternative means of obtaining [] documents."  *RSR Corp. v. Brock*, 764 F.2d 355, 368 (5th Cir. 1985).

The rationale for such distinction between discovery and public records requests is most clearly set forth in the Third Circuit Court of Appeals' discussion of the inapplicability of a discovery stay to a request for public documents in *Leucadia, Inc. v. Applied Extrusion Techs.*, 998 F.2d 157 (3d Cir. 1993).  In *Leucadia*, the Third Circuit considered arguments raised by a defendant in a securities fraud action who had obtained a stay of discovery pending ruling on its motion to transfer.  Despite the stay of discovery, plaintiff had requested access to public records

relevant to the litigation that were kept under court seal in prior litigation.  Defendant objected that such a request constituted improper "discovery" in violation of the federal litigation discovery stay, and argued that plaintiff should not be allowed to review the public records.  The Third Circuit overruled defendant's objection, explaining:

> [T]he applicability and importance of the interests favoring public access are not lessened because they are asserted by a private party to advance its own interests in pursuing its lawsuits against a party to the original action.  The discovery stay imposed in the collateral securities litigation does not change this result.  Just as Plaintiff could, consistent with the stay order, continue to research the factual underpinning for his claim in libraries or other institutions where publicly available information is stored, so he may also inspect and copy those court records which any member of the public has a right to view.

*Id.* at 167-68 (citations and brackets omitted).

Other federal courts have similarly ruled that a stay of discovery will not prevent a plaintiff from continuing to investigate its claims via avenues other than discovery, including public records requests.  For example, in *Jackson v. First Fed. Sav., F.A.*, after filing a securities fraud claim against defendants, plaintiff agreed to a discovery stay pending the determination of defendants' motion to dismiss.  709 F. Supp. 887, 889 (E.D. Ark. 1989).  After the court entered the stay of discovery, plaintiff submitted a FOIA request to the defendant bank's board.  *Id.*  Upon learning of this request, defendants objected to plaintiff's obtaining these documents because they claimed plaintiff's FOIA request was a violation of the stay of discovery that had been issued.  *Id.*  The Court, however, expressly rejected this argument, and stated that the discovery stay was not violated by plaintiff's FOIA request, and that in fact, "Plaintiff did no discovery." *Id.*

Similarly, in *Noland v. City of Albuquerque*, a defendant (the City) denied a public records request relating to federal litigation that was made by plaintiff under the New Mexico Public Records Act.  2009 U.S. Dist. LEXIS 114183, *8 (D.N.M. Oct. 27, 2009).  The City

based its denial on the argument that such a request was barred as improper discovery under the Federal Rules of Civil Procedure. *Id.* at *3-*4. However, the court rejected this argument, and instead found that a public records request made by a litigant was not discovery for purposes of federal litigation, stating that "like FOIA, the [New Mexico Public Records Act] provides a statutory right to request information, independent of the limits or constraints on discovery provided in the Federal Rules of Civil Procedure." *Id.* at *8.

In fact, federal courts across the country have issued similar rulings that public records request are not considered "discovery" or subject to any prohibitions on such "discovery." *See, e.g., Stratienko v. Chattanooga-Hamilton County Hosp. Auth.*, 2008 U.S. Dist. LEXIS 37917, *9 (E.D. Tenn. May 7, 2008) (ruling that request under Tennessee Open Records Act was not "discovery"); *Republic of Colom. v. Diageo N. Am. Inc.*, 2007 U.S. Dist. LEXIS 81923, *4 (E.D.N.Y. Nov. 5, 2007) ("this court does not consider the obtaining of information by means of FOIA requests to be discovery"); *Searcy v. Broome*, 2007 U.S. Dist. LEXIS 46810, *4 (D.S.C. June 27, 2007) (enforcing stay of discovery during pendency of summary judgment motion but informing plaintiff that he could nonetheless obtain information relating to the litigation by making a public records request); *Matthews v. Marten Transp., Ltd.*, 2004 U.S. Dist. LEXIS 26828, *3-*4 (W.D. Wis. Dec. 28, 2004) (stating that plaintiff could obtain public records for information relevant to litigation even when he was barred from seeking discovery in litigation).

Thus, regardless of whether a stay of discovery would ultimately ever be proper because of the filing or anticipated filing of a motion to dismiss, such a stay would simply not support ordering a stay of the Wisconsin state court's mandamus order because that order neither relates to nor orders production of "discovery." Instead, the mandamus order only addresses and

enforces Menasha's statutory obligations to make public records available to American Bank (or anyone, for that matter).

Defendants effectively ask this Court to condone their attempts to "lock the library doors" in an effort to prevent Plaintiffs from obtaining any information that at all relates to this suit, public or otherwise. However, the Private Securities Litigation Reform Act ("PSLRA") neither contemplates nor authorizes a court to order Plaintiffs to ignore all sources of information relevant to a lawsuit; indeed, such a reading of the PSLRA would all but make it impossible for securities fraud claims to **ever** survive a motion to dismiss. Instead, the PSLRA states only that the Court has the authority to issue a stay of **discovery**, and as stated succinctly by the *Jackson* court, in requesting public documents, "Plaintiff[s] did no discovery."

**B.    Defendants Misrepresent the Mandate As to When A Stay of Discovery Must Be Entered By the Court Under the PSLRA**

Not only is Defendants' position that state public records requests constitute discovery wrong, but Defendants' argument that a stay must immediately be entered by the Court is both misleading and overstated. Defendants ignore the plain language of the PSLRA when they state that a stay of discovery in this matter is "automatic" and, thus, the PSLRA provides grounds for ordering a stay of the Wisconsin state court's mandamus order. In fact, it is not even clear that a stay of discovery is yet warranted in **this** action given the current procedural posture.

Although Defendants omit reference to this controversy in their Motion to Stay, since the PSLRA and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") were enacted, courts have diverged on the proper interpretation of the PSLRA's edict that discovery "shall be stayed during the pendency of any motion dismiss." In fact, many courts have acknowledged that the plain language of this provision does not allow a stay of discovery to be entered until defendants in a securities fraud case **actually file a motion to dismiss**. *See Dartley v. Ergobilt,*

8

*Inc.*, 1998 U.S. Dist. LEXIS 17751, *2-*3 (N.D. Tex. Nov. 4, 1998).  Further, this interpretation has been followed by a number of federal courts which have refused to issue the "automatic stay of discovery" until a motion to dismiss has, in fact, been filed.  *See, e.g. id.* at *5 (upholding a magistrate judge's determination that discovery should not be stayed prior to the filing of a motion to dismiss in securities fraud litigation because "under the PSLRA, discovery **must** be stayed only when a motion to dismiss has actually been filed.  There is no motion to dismiss currently pending before this court."); *Novak v. Kasaks*, 1996 U.S. Dist. LEXIS 11778 (S.D.N.Y. Aug. 16, 1996) (noting that "certain defendants requested a stay of discovery in anticipation that motions to dismiss would be filed.  The Court denied the request…stating that 'the request to stay discovery at this stage of the proceedings, prior to the filing of the motion to dismiss is denied, with leave to renew upon the filing of such motion.'")  Even courts that have strayed from this literal translation of the PSLRA have acknowledged that they do so only after careful consideration.  *See, e.g., In Re Carnegie Int'l Corp. Secs. Litig.*, 107 F. Supp. 2d 676, 682 (D. Md. 2000) (acknowledging that "courts have differed in their interpretation of the stay provision and whether it should apply when a motion to dismiss has not actually been filed with the court" before ruling that discovery stay should be granted where motion to dismiss was anticipated).

Defendants fail to acknowledge or address this controversy in their Motion to Stay, despite specifically citing *In Re Carnegie* in support of their claim that an "automatic stay of discovery" must be entered because "Defendants anticipate filing such a motion [to dismiss.]" (Mot. to Stay pp. 2-3, n.1.)  However, this attempt at using the PSLRA offensively against Plaintiffs' efforts to obtain public information that is unlawfully being withheld from them should actually weigh **against** the issuance of a stay of discovery.  *See, e.g., Piven v. Ryan*, 2006 U.S. Dist. LEXIS 8274, *14-*15 (N.D. Ill. Mar. 1, 2006) (stating that courts have refused to

9

enter a stay of discovery during the "pendency" of a motion to dismiss "where it is clear, based upon the parties' conduct, that the defendants have attempted to stonewall or to use the rules of procedure as a sword to stymie the plaintiff's efforts to uncover wrongdoing.") Both case law and the plain language of the PSLRA support denial of a stay of discovery until a motion to dismiss has actually been filed by Defendants. Thus, Defendants' efforts to glaze over the Court's discretion on this issue should weigh against the assertion of that discretion in Defendants' favor. Instead, the Court should follow the lead of the other federal courts and refuse to order a stay of discovery prior to the actual filing of a motion to dismiss by Defendants.

C. **Even if A Stay of Discovery Were Entered in This Action, Defendants Neither Identify Nor Meet The Applicable Standard Under the SLUSA for This Court to Order A Stay of State Court Proceedings**

The SLUSA specifically states that a district court is authorized, at its discretion, to stay discovery in a state court action only upon a "proper showing" by Defendants that such a stay is "necessary in aid of its jurisdiction, or to protect or effectuate its judgments[.]" *See, e.g., Lapicola v. Alt. Dual Fuels, Inc.*, 2002 U.S. Dist. LEXIS 5941, *3-*4 (N.D. Tex. April 2, 2002) (quoting *In Re Transcrypt Int'l Secs. Litig.*, 57 F. Supp. 2d 836, 847 (D. Neb. 1999)).

> A "proper showing" would include evidence that a stay is necessary to protect important interests that the [PSLRA] was passed to protect…[including]: (1) to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss; and (2) to avoid the situation in which a plaintiff sues without possessing the requisite information to meet the heightened pleading requirements of the PSLRA, then uses discovery to acquire that information and resuscitate a complaint that is otherwise subject to dismissal.

*Id.*, citing *In Re Comdisco Secs. Litig.*, 166 F. Supp. 2d 1260 (N.D. Ill. 2001); *accord In Re DPL Inc., Secs. Litig.*, 247 F. Supp. 2d 946, 950-51 (S.D. Ohio 2003).

Here, Defendants do not establish (or even suggest) that a stay is necessary in aid of this Court's jurisdiction, as required by the SLUSA, nor do they meet the burden of proving an

10

"important interest" of the PSLRA and SLUSA would be furthered by a stay of the Wisconsin state court proceedings. In fact, relevant case law and legislative history demonstrate that neither concern is implicated by the Wisconsin court's order, and it would thus be inappropriate for this Court to issue such a stay.

> 1. **The Purpose of a Discovery Stay Under the PSLRA Is to Prevent Discovery Abuses, and Not to Prevent Litigants from Accessing Publicly Available Documents**

The primary purpose of a discovery stay under the PSLRA and SLUSA is to prevent discovery abuses by litigants with questionable claims, not to deprive litigants of rights granted independently by other state or federal laws. Throughout the legislative process resulting in the enactment of the PSLRA and SLUSA, both chambers of Congress expressed concern that "strike suits" were routinely being filed "against issuers of securities and others whenever there [was] a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action." H.R. REP. NO. 104-369, at 31 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, at 730. After filing such "strike suits," plaintiffs often implemented an "abuse of the discovery process to impose costs so burdensome that it [was] often economical for the victimized party to settle." *Id.*

In describing such securities fraud "strike suits," Congress noted that "there is a collection of class-action lawyers out there who are filing meritless fraud suits against publicly traded companies, especially high-technology firms, whenever their stock prices fall. A relatively small group of lawyers is responsible for the bulk of these suits, characterized by professional plaintiffs and victims on retainers." 141 CONG. REC. H14039, at 14048 (1995). Further, in these strike suits, "discovery costs account for roughly 80% of total litigation costs. In addition is the threat

11

that the time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements." H.R. REP. No. 104-369, at 37.

Prior to the enactment of the PSLRA, such abusive strike suits had become so prevalent that "when a stock goes down, a company gets sued automatically."  141 CONG. REC. H14039, at 14049.  Further, the state of then-applicable law "allow[ed] [] price fluctuations to form the basis for lawsuits even when no real fraud ha[d] occurred."  141 CONG. REC. H14039, at 14052.  Thus, to address these strike suits and deficiencies in the law, Congress enacted the PSLRA and its provision for a stay of discovery to be entered during the pendency of a motion to dismiss.

However, after the PSLRA was enacted, plaintiffs began to avoid the PSLRA stay of discovery by filing securities fraud class actions under state laws in state courts.  *See* Legislative Findings in Support of SLUSA, 15 U.S.C.§ 78(a).  To address these efforts to avoid the PSLRA, Congress thus enacted the SLUSA, by which courts could stay discovery proceedings in any such state court securities fraud class actions.  *See In Re Transcrypt Int'l Secs. Litig.*, 57 F. Supp. 2d at 842 (quoting SLUSA Findings in stating that SLUSA's purpose was to "prevent certain State private securities class action lawsuits alleging fraud being used to frustrate the objectives of the [PSLRA]").  In doing so, Congress finally prevented plaintiffs from using baseless "strike suits" for the sole purposes of coercing a settlement or using the discovery process to fish for corporate documents, otherwise unavailable to plaintiffs and their attorneys except through litigation, that would support a fraud claim.  *Id.*

Here, Plaintiffs' request for public records, and the corresponding Wisconsin mandamus action, is clearly not the type of "discovery proceeding" that the PSLRA and SLUSA were enacted to address.  In addition to such a request not constituting discovery under **any** law (see Sec. A, *supra*), Plaintiffs' lawsuit is not "baseless conjecture" filed due to the price fluctuations

12

of a volatile market. Instead, Plaintiffs only filed suit after Defendants defaulted on approximately $23,000,000 in securities obligations that matured in September, 2009, and then also refused to enter into a tolling agreement that would preserve Plaintiffs' rights while Defendants developed a work-out plan. Further, this situation does not correspond to that envisioned by Congress in enacting the SLUSA, where a state court action is filed because discovery is the only manner by which plaintiffs can access private, corporate documents that might support a fraud claim. Instead, the documents sought by Plaintiffs are public documents that are merely in Defendants' custody, and to which Plaintiffs have an absolute and statutory right – as has already been determined by the Wisconsin court in the mandamus proceeding. The fact that the custodian of the relevant public information and documents in this case also happens to be named as a defendant does not strip Plaintiffs of their rights any more than the PSLRA discovery stay is meant to prevent a plaintiff in securities litigation from obtaining information from a public library, newspaper, or other public source of information. Thus, Congress' interest in preventing discovery abuses under the PSLRA and SLUSA does not support this Court issuing a stay of the Wisconsin public records proceedings.

> **2.   Defendants Fail to Meet Their Burden To Show That A Stay Is Required to Protect Defendants from an Unreasonable Burden Prior to Disposition of Any Motion to Dismiss Defendants Might File**

The other concern a PSLRA and SLUSA discovery stay is meant to address is the use of discovery by plaintiffs to so burden a defendant with the prospects of expensive discovery that plaintiffs are able to coerce a settlement. *In Re: DPL Inc., Secs. Litig.*, 247 F. Supp. 2d 946, 950-51 (S.D. Ohio 2003). Prior to enactment of the PSLRA and SLUSA, this practice was so prevalent, and the expense of securities fraud discovery so great, that defendants would as a

13

matter of course settle even the most frivolous or baseless suits.  *See In Re Transcrypt Int'l Secs. Litig.*, 57 F. Supp. 2d at 841-44.

However, this concern is not implicated in the public records request made by American Bank, as Wisconsin law provides that a requester of public records must reimburse a public authority for any resources expended in gathering responsive documents.  WIS. STAT. § 19.35(3).  Such expenses even include the hourly wages of any public employees whose efforts are needed to respond to a public records request.  WIS. STAT. § 19.35(3).  Thus, the public records request submitted by American Bank could hardly be construed as an attempt at coercing settlement via burdensome and expensive discovery – in fact, it is likely that Defendants would **profit** via production of any public records in this manner, as Defendants would have no obligation to produce these records a second time when responding to any future discovery that occurs in this action, for which Defendants would have to gather and produce without compensation.  Thus, congressional interest in preventing attempts to coerce settlement by limiting discovery in securities fraud actions does not support the issuance of a stay in this case.

### D. <u>Defendants' Interpretation of the Statute Implicates Important First Amendment Rights</u>

The issue before this Court is whether the PSLRA or SLUSA should be interpreted in a manner that would deprive a person of the right to access public records (as recognized by a state court) absent an express indication from Congress.  The answer is no.

There is no dispute at this point that the documents sought in the separate state proceeding are public records – the Wisconsin court has made this clear in its order.  Nor is there any dispute that the general public, particularly American Bank, has a right to review those records – the Wisconsin court has also made this clear in its order.  Nevertheless, Defendants ask this Court to directly interfere with the relationship between the State of Wisconsin and its

citizens on a matter that courts around the country have stated is essential to preserve the democratic form of government. Defendants' efforts to thwart the stated policy of Wisconsin and the order of the Wisconsin Court by using the PSLRA and SLUSA to drive a wedge between citizens of the state and their right to receive and review public records raise grave constitutional concerns under the First Amendment.

First, Defendants' interpretation of the PSLRA and SLUSA as applied in this context would interfere with the public's First Amendment rights. Several courts have held that the "public has both a First Amendment and a common law right of access to public records." *Olopai v. Guerrero*, 1993 U.S. Dist. LEXIS 13839, at *1 (D.N. Mar. I. Sept. 24, 1993) (citing *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988); *United States v. Beckham,* 789 F.2d 401, 419 (6th Cir. 1986) (Contie, J., dissenting); *Soc'y of Prof'l Journalists v. Briggs,* 675 F. Supp. 1308, 1310 (D. Utah 1987)).

> As the Court stated in *Olopai*:
>
> Any member of the public is injured by the abridgement of that right. For example, in *El Dia, Inc. v. Hernandez Colon*, 783 F. Supp. 15, 20 (D.P.R. 1991), rev'd on other grounds, 963 F.2d 488 (1st Cir. 1992), the court held that by virtue of her being a citizen, the plaintiff had standing to challenge an executive order issued by Puerto Rico's governor which restricted access to public documents. Accord *Northwest Publications, Inc. v. Anderson*, 259 N.W.2d 254, 256 (Minn. 1977) (holding that "any member of the public is an injured or aggrieved party by the operation of orders preventing accessibility" to public records).

*Id.* at *5-*6.

> The reasoning behind recognition of such a right is sound:
>
> If the government is given the unfettered discretion to decide what information to make available to the press and the public, it has the power to distort the information and hide the truth. The first amendment guarantees of free speech and free press protect our right to freely criticize the government without fear of censorship by the government. But censorship in speaking and publishing is not the only form of censorship that must be prevented. The process of filtering information -- selectively releasing some information while withholding other

15

> information -- can be effectively used to prevent criticism and hide mistakes. The first amendment guarantees apply to both forms of censorship.

*Soc'y of Prof'l Journalists*, 675 F. Supp. at 1309-10 (citation omitted). In holding that the public has a constitutional right of access to public records, the district court noted that the core of the First Amendment is "access to information about the operation and functioning of government." *Id.* at 1309 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 583-84 (1980) (Stevens, J., concurring)). American Bank's (and for that matter the general public's) access to information about the operation and function of Menasha's government is the precise right at issue in the mandamus proceedings and the right which Defendants seek to limit in this Court.

Although it was not faced with this precise issue, the Seventh Circuit Court of Appeals has stated that there is no constitutional right to have access to particular information or openness from the bureaucracy and that the right of access to public information as described by the U.S. Supreme Court is restricted to certain judicial proceedings and records. *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998) (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality opinion)); *see also Shea v. Office of the Dist. Attorney for Dane County Wis.*, 1999 U.S. App. LEXIS 30205 (7th Cir. Nov. 15 1999) (no generalized constitutional right exists). However, neither of these cases dealt directly with the right to be informed about the operations of the government – particularly where, as here, there is a clear mandate from the state. In *Travis*, the court held that the Privacy Act could restrict a state from selling personal identifying information from its motor vehicle records. 163 F.3d at 1002. In *Shea*, the issue was whether Shea had a right to the records collected by the district attorney in connection with a prosecution against him.

The Seventh Circuit relied heavily upon the U.S. Supreme Court's plurality holding in *Houchins v. KQED*, 438 U.S. 1 (1978).[4]  However, the U.S. Supreme Court did not address a situation in which a state court had already determined that a member of the public had a right to receive or review public records.  Rather, the issue before the Court was whether the Constitution provided a right to the public or the media to enter a penal facility to gather information and take pictures.  *Id.* at 2.  Three Justices dissented, however, noting that the "'preservation of a full and free flow of information to the general public has long been recognized as a core objective of the First Amendment to the Constitution.'"  *Id.* at 30.

Two years later, the Court considered whether the First Amendment guaranteed a right of access to criminal trials in *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980).  The plurality held that it did.  *Id.*  However, in his concurring opinion, Justice Stevens wrote, "**Today…for the first time, the Court unequivocally holds that an arbitrary interference with access to important information is an abridgment of the freedoms of speech and of the press protected by the First Amendment.**"  *Id.* at 583 (emphasis added).  Justice Stevens further stated that "the First Amendment protects the public and the press from abridgment of their rights of access to information about the operation of their government, including the Judicial Branch . . . ."  *Id.* at 584.  Similarly, although less ardently, Justices Brennan and Marshall stated in their concurrence that the Court had previously not expressly embraced or rejected "that public access to information may at times be implied by the First Amendment and the principles which animate it."  *Id.* at 586.

It is no coincidence that these are the same principles that were articulated by Congress in 1966 when addressing the Freedom of Information Act.  As set forth in House Report No. 89-

---

[4] The plurality opinion was issued by three justices, there was one concurring opinion, and three justices joined in the dissent.  Two justices did not participate.

1497, the purpose of the bill was "to clarify and protect the *right* of the public to information" about the government. Congress recognized that the "right to know" was "inherent in the right to speak and the right to print." H.R. REP. NO. 89-1497 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, at 2419. Further, these are the same principles embodied in Wisconsin's Open Records Law.

However, this constitutional issue can be avoided through an interpretation of the statute that is both supported by the plain language of the statute and the Congressional record – namely, that a mandamus action to enforce a state's open records law is not a discovery proceeding.

## CONCLUSION

Defendants seek to twist the laws to serve their whim. Such a tactic should neither be endorsed nor rewarded. Particularly where, as here, Defendants have failed to demonstrate any of the statutory prerequisites for the relief they request. There is no pending motion to dismiss; a state public records request does not constitute a discovery proceeding; and, Defendants have failed to provide any justification that would permit this Court to stay the public records proceeding and the Wisconsin Court's Mandamus Order.

Respectfully submitted,

ICE MILLER LLP

s/ Michael A. Wukmer
Michael A. Wukmer
Michael T. McNally
Jacob R. Cox

Attorneys for Plaintiffs

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2426
Fax: (317) 592-4825

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing has been served upon the following, via this Court's Electronic Case Filing System, on the 8th day of February, 2010:

    Brian E. Casey
    Barnes & Thornburg LLP
    brian.casey@btlaw.com


            s/ Michael A. Wukmer
            Michael A. Wukmer
            Michael T. McNally
            Jacob R. Cox

            Attorneys for Plaintiffs

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2426
Fax: (317) 592-4825