**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION (LAFAYETTE)**

```
----------------------------------------------------------------------X
THE LAFAYETTE LIFE INSURANCE COMPANY,          :
MERCY RIDGE, INC., AMERICAN BANK, and all      :
others similarly situated,                     :
                                               :
                         Plaintiffs,           :
                                               :
            - against -                        :   Cause No. 4:09-CV-64-TLS-APR
                                               :
CITY OF MENASHA, WISCONSIN, a municipal        :
corporation, MENASHA UTILITIES, MENASHA        :
STEAM UTILITY, and RBC CAPITAL MARKETS         :
CORP. f/k/a RBC DAIN RAUSCHER, INC.,           :
                                               :
                         Defendants.           :
----------------------------------------------------------------------X
```

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of March 28, 2011 ("Agreement"), is made and entered into by and among the parties to the above-captioned action: (i) Plaintiffs, The Lafayette Life Insurance Company, Mercy Ridge, Inc., and American Bank ("Plaintiffs"), on their own behalf and on behalf of each member of the Settlement Class, as defined herein, by and through their counsel of record; and (ii) Defendants, City of Menasha, Wisconsin, a municipal corporation ("Menasha"), sued herein as City of Menasha, Menasha Utilities, and Menasha Steam Utility, and RBC Capital Markets, LLC (f/k/a RBC Capital Markets Corp.) ("RBC") (Menasha and RBC referred to collectively as "Defendants"), by and through their counsel of record (Plaintiffs and Defendants referred to collectively as the "Parties"). This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims, as defined herein, subject to the terms and conditions set forth herein. Capitalized terms

**EXHIBIT A**

not otherwise defined shall have the meaning ascribed in the Definitions section of this Agreement.

## I.   THE LITIGATION

Plaintiffs filed this action in the United States District Court for the Northern District of Indiana (the "Court") on September 18, 2009, as a putative class action on behalf of themselves and all similarly situated persons or entities who purchased or hold certain bond anticipation notes ("BANs," as further defined herein) issued by Menasha in 2005 and 2006.

Plaintiffs allege that Defendants sold or participated in the sale of the BANs in violation of federal and state securities laws, and statutory and common law duties described in the First Amended Complaint, and that Menasha defaulted on the payment of principal and interest due on the BANs at their maturity on September 1, 2009, as well as breached covenants associated with the BANs.  On June 7, 2010, Plaintiffs filed a First Amended Complaint.  Defendants thereafter moved to dismiss the First Amended Complaint, and their motions are pending.

## II.   PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the First Amended Complaint have merit. Plaintiffs recognize and acknowledge, however, the expense and length of continued proceedings to prosecute the Action through trial and appeal.  Plaintiffs have made a thorough investigation of the facts and believe that the settlement set forth in this Agreement would confer substantial benefits upon and is in the best interests of Plaintiffs and the Settlement Class.

## III.   DEFENDANTS DENY ANY LIABILITY

Defendants deny each of the claims and contentions alleged by Plaintiffs in the Action. Defendants expressly have denied and continue to deny that they committed any violation of law or engaged in any of the wrongful acts alleged in the First Amended Complaint.  Defendants are

**EXECUTION COPY**

prepared to enter into this Agreement solely because the proposed settlement will eliminate the burden, expense, and uncertainty of further litigation.  Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the covenants, agreements and releases set forth herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree to settle the Action on the following terms and conditions.

## IV.   TERMS AND CONDITIONS

### A.   Definitions

The following terms, as used in this Agreement, have the following meanings:

1.   "Action" means the above-captioned action, filed on September 18, 2009 in United States District Court for the Northern District of Indiana.

2.   "Approved Disbursements" means the total amount of funds approved by the Court for disbursement from the Settlement Fund, for payment of the costs and expenses of the Settlement, including the costs of notice, expenses of administration of the Settlement Fund, the costs, fees, and expenses of the Settlement Escrow Agent or any claims administrator appointed by Class Counsel and approved by the Court, and the fees and disbursements awarded to Class Counsel.

3.   "BAN" means bond anticipation note, but as used in this Agreement "BANs" refers collectively to the following: "2005 BANs" means the Taxable Steam Utility Revenue Bond Anticipation Notes, CUSIP #586499AA3, issued by Defendant City of Menasha, Wisconsin on or about February 1, 2005, with a stated maturity date of September 1, 2009;  and

- 3 -

EXECUTION COPY

"2006 BANs" means the Taxable Steam Utility Revenue Bond Anticipation Notes, CUSIP #586499AB1, issued by Defendant City of Menasha, Wisconsin on or about December 1, 2006, with a stated maturity date of September 1, 2009.   The BANs are the subject of the claims asserted in the Action.

      4.    "BANs' Outstanding Principal Balance" means the combined, outstanding and unpaid principal balance of the 2005 BANs and 2006 BANs, in the amount of $22,777,165.99, comprised of an outstanding and unpaid principal balance of $11,935,385.82 under the 2005 BANs and an outstanding and unpaid principal balance of $10,841,780.17 under the 2006 BANs.

      5.    "Claims Process" means the process formulated by Class Counsel in conjunction with the Settlement Escrow Agent and any claims administrator selected by Class Counsel, and approved by the Court, whereby Class Members shall be required to and may submit claims seeking a distribution from the Settlement Fund pursuant to any formula approved by the Court.

      6.    "Class" or "Settlement Class" means all persons or entities who purchased or held 2005 BANs or 2006 BANs during the Class Period, but excluding (i) persons or entities who have timely excluded themselves from the Class in accordance with the procedures described in this Agreement and the exhibits thereto; and (ii) Defendants and their respective parents, subsidiaries, and affiliates.

      7.    "Class Counsel" means the law firm of Ice Miller LLP, One American Square, Suite 2900, Indianapolis, Indiana, 46282.

      8.    "Class Member" or "Settlement Class Member" means each member of the Settlement Class who does not timely elect to be excluded from the Settlement Class.

      9.    "Class Member Holder Opt-out" means a potential Class Member who, as of the Exclusion Date, holds, owns or beneficially owns a 2005 BAN or 2006 BAN, and elects, in

- 4 -

accordance with the procedures described in this Agreement and the exhibits annexed hereto, to exclude him, her or itself from the Settlement.

10.     "Class Member Purchaser Opt-out" means a potential Class Member who purchased during the Class Period, but as of the Exclusion Date does not hold, own or beneficially own, a 2005 BAN or 2006 BAN, and elects, in accordance with the procedures described in this Agreement and the exhibits annexed hereto, to exclude him, her or itself from the Settlement.

11.     "Class Period" means the period from and including calendar year 2005 through the Effective Date.

12.     "Class Representatives" means Plaintiffs The Lafayette Life Insurance Company, Mercy Ridge, Inc., and American Bank.

13.     "Defendants" means City of Menasha, Wisconsin, a municipal corporation, sued herein as City of Menasha, Menasha Utilities, Menasha Steam Utility, and RBC Capital Markets, LLC (f/k/a RBC Capital Markets Corp.), referred to collectively.

14.     "Effective Date" or "Effective" when used in connection with this Agreement means the first day on which all of the following are true:  (a) the Court has entered the Order and Final Judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing, as of the Effective Date, the Action against Defendants, on the merits with prejudice as to all Settlement Class Members and without costs, and the Order and Final Judgment has become Final; and (b) the Settlement Amount has been deposited with the Settlement Escrow Agent, irrevocably and without further condition or possibility of payment to any person or entity other than Class Members or Class Counsel (or for the payment of

- 5 -

**EXECUTION COPY**

Approved Disbursements), in furtherance of the Order and Final Judgment and in consummation of the Settlement.

15. "Exclusion Date" means the last date by which a Class Member may elect to exclude him, her or itself from the Settlement in accordance with the procedures described in this Agreement and the exhibits thereto.

16. "Exclusion Request" means the written request that any Class Member seeking to exclude him, her or itself from the Settlement must complete, certify and timely submit in accordance with the procedures described in this Agreement and the exhibits annexed hereto.

17. "Execution Date" means the last date on which this Agreement is signed by the Parties, which is the date first written above.

18. "Final" when used in connection with the Settlement or the Order and Final Judgment means the date on which the time for appeal or to seek permission to appeal from the Order and Final Judgment has expired, or the Order and Final Judgment has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

19. "Order and Final Judgment" means that order and final judgment to be entered by the Court in the Action, substantially in the form of Exhibit D hereto, which finally approves this Agreement and the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure, and which, as of the Effective Date, dismisses the Action against Defendants, on the merits with prejudice as to all Class Members and without costs. The Order and Final Judgment shall provide that it shall not become final and binding until the Effective Date.

20. "Released Claims" means and includes any and all claims, causes of action, demands, rights or liabilities, complaints, agreements, promises (express or implied), contracts,

**EXECUTION COPY**

undertakings, covenants, guarantees, grievances, damages, obligations, expenses, debts and demands whatsoever, whether present or future, of whatever kind or nature, whether sounding in law or in equity, from the beginning of time until the end of time, including both known and Unknown Claims, as defined herein, and including but not limited to, claims of fraud, negligence, negligent misrepresentation, gross negligence, professional negligence, breach of duty of care, breach of loyalty, breach of fiduciary duty, mismanagement, corporate waste, breach of contract, or violations of any federal or state statute, rule, or regulation, that have been or could have been asserted in the Action or in any other forum by or on behalf of the Settlement Class, or any Member of the Settlement Class, based on, arising out of, related to, or in any way connected with the 2005 BANs, 2006 BANs, or the facts, allegations, events, occurrences, transactions, or subject matter referred to or described in the First Amended Complaint or the Action.

21.    "Releasees" means and refers individually and collectively to: Defendants, and WPPI, and/or their current and former, direct and indirect subsidiaries (wholly-owned or not), parents, successors, affiliates, assignees, personal representatives, business units or groups, and assigns, and any and all of each of their current and/or former employees, agents, attorneys, officers and directors, shareholders or members, or in the case of Menasha, any duly elected or appointed public officials, including but not limited to the Mayor of Menasha and each and every member of the Menasha Common Council.

22.    "Releasors" shall refer jointly and severally and individually and collectively to each Member of the Settlement Class, and their respective past and present parents, attorneys, subsidiaries, affiliates, agents, heirs, executors, administrators, guardians, successors and assigns; and Class Counsel.

- 7 -

**EXECUTION COPY**

23.    "Settlement" means the settlement of the Action described in this Agreement and subject to the terms and conditions set forth herein.

24.    "Settlement Amount" means the sum of $17,500,000.

25.    "Settlement Escrow Agent" means The Bank of New York Mellon Trust Company, N.A., or such other entity selected by Plaintiffs, which has been or will be retained by Plaintiffs to carry out the duties of the Settlement Escrow Agent specified in this Agreement, including but not limited to administration of the Settlement Fund.

26.    "Settlement Fund" means the interest-bearing account established by order of the Court and maintained under the Court's jurisdiction as a Qualified Settlement Fund within the meaning of Treasury Regulation 1.46813-1, as amended, for the purpose of investing, conserving and protecting the Settlement Amount, and any interest earned thereon, prior to distribution, and distribution as directed by the Court.

27.    "Unknown Claims" means and includes any and all Released Claims which Plaintiffs or any member of the Settlement Class does not know or suspect exists in his, her or its favor at the time of their release of the Releasees, which if known by him, her, or it might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all such Unknown Claims, the Parties agree that, upon the Effective Date, each Member of the Settlement Class shall have, by operation of this Agreement, and the Order and Final Judgment of the Court approving this settlement, expressly waived any and all provisions, rights and benefits conferred by any law of the United States, or of any state or territory of the United States, or principle of common law, which is equivalent, comparable, or similar in any way to Cal. Civ. Code § 1542, which provides:

- 8 -

**EXECUTION COPY**

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge, and Members of the Settlement Class are deemed to acknowledge, that inclusion of Unknown Claims within the definition and scope of Released Claims has been a separately bargained for and key element of the Settlement.

28.     "WPPI" means WPPI Energy, a Wisconsin municipal electric company.

29.     "WPPI Agreement" means that certain Asset Purchase Agreement by and among City of Menasha, Wisconsin, Menasha Utilities Commission, and WPPI Energy, dated as of December 8, 2009.

30.     "WPPI Transaction" means that combined asset sale and leaseback transaction, respecting certain utility assets now owned by Menasha, which is the subject of the WPPI Agreement and which Menasha and WPPI intend to close no later than April 6, 2011.

31.     "WPPI Transaction Contingencies" means those conditions and contingencies set forth in the WPPI Agreement or the WPPI Transaction Escrow Agreement, to which transfer of the Settlement Amount, inclusive of the WPPI Transaction Net Proceeds, to the Settlement Escrow Agent is or may be subject, unless waived by WPPI, including but not limited to various actions by governmental regulatory bodies over which neither WPPI nor Menasha has control, WPPI's right to terminate the WPPI Transaction Escrow Agreement pursuant to its terms, as well as the condition precedent that the Settlement and Order and Final Judgment be approved by the Court and become Final.

32.     "WPPI Transaction Escrow Agreement" and "WPPI Transaction Escrow Agent" mean, respectively, (i) that escrow agreement to be entered into between WPPI, Menasha and JPMorgan Chase Bank, National Association, as escrow agent, in connection with the WPPI

**EXECUTION COPY**

Transaction, and (ii) the escrow agent duly appointed to act pursuant to the WPPI Agreement and the WPPI Transaction Escrow Agreement, and to whom the Settlement Amount, inclusive of the WPPI Transaction Net Proceeds, shall be deposited upon closing of the WPPI Transaction, and who is or shall be authorized to transfer the Settlement Amount, inclusive of the WPPI Transaction Net Proceeds, to the Settlement Escrow Agent for deposit into the Settlement Fund when the Order and Final Judgment becomes Final.

33.    "WPPI Transaction Net Proceeds" means the sum of not less than $17,300,000 to be deposited by WPPI with the WPPI Transaction Escrow Agent, upon the closing of the WPPI Transaction and for the purpose of applying such sum to payment of the Settlement Amount.

**B.    Certification of the Settlement Class**

34.    The Parties agree, only for purposes of the Settlement and for no other purpose, that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to the Court's approval, that the following Class may be certified for settlement purposes only:

> All persons or entities who purchased or held a 2005 BAN or 2006 BAN during the Class Period, but excluding (i) persons or entities who have timely excluded themselves from the Class in accordance with the procedures described in this Agreement and the exhibits thereto, and (ii) Defendants and their respective parents, subsidiaries, and affiliates.

In the event the Settlement, for whatever reason, does not obtain final approval from the Court, is terminated, or otherwise does not become Final and Effective pursuant to the terms and conditions of this Agreement, then any Settlement Class that has been certified by the Court shall be deemed decertified, and Defendants shall have the right to oppose certification of a class in any subsequent legal proceedings.

- 10 -

**EXECUTION COPY**

C.     <u>**Express Conditions Precedent to the Settlement**</u>

35.     The Settlement, and any obligation of Menasha to pay the Settlement Amount, are expressly contingent and conditioned upon (i) closing of the WPPI Transaction, (ii) satisfaction (or waiver by WPPI) of the WPPI Transaction Contingencies, as determined by WPPI in its sole discretion under the terms of the WPPI Agreement and the WPPI Transaction Escrow Agreement, (iii) WPPI's transfer of the WPPI Transaction Net Proceeds, in the sum of not less than $17,300,000, to the WPPI Transaction Escrow Agent, (iv) the Order and Final Judgment being entered and becoming Final, and (v) the WPPI Transaction Escrow Agent's transfer of the Settlement Amount (less any sum advanced pursuant to paragraph 42), inclusive of the WPPI Transaction Net Proceeds, free and clear of any liens, security interests or other superior right, title or interest, to the Settlement Escrow Agent for deposit into the Settlement Fund and payment of the Settlement Amount.  Menasha and WPPI intend to close the WPPI Transaction by April 6, 2011; however, no assurance, representation or warranty can be or is being given that the WPPI Transaction will close by April 6, 2011, or at any time, or that the WPPI Transaction Contingencies will be satisfied (or waived by WPPI). Notwithstanding the foregoing, Menasha shall immediately notify Class Counsel (i) if the WPPI Transaction does not close by April 6, 2011, (ii) if the WPPI Transaction closes but the WPPI Net Proceeds transferred to the WPPI Transaction Escrow Agent are less than $17,300,000, and (iii) upon Menasha's being notified by WPPI that all WPPI Transaction Contingencies (other than the Order Condition and Appeal Condition as defined in the WPPI Escrow Agreement) have been satisfied (or waived by WPPI), and in connection therewith shall provide Class Counsel with a copy of such notice from WPPI. Plaintiffs, on their own behalf and on behalf of each Member of the Settlement Class, expressly acknowledge that the foregoing conditions set forth in (i) to (v) are express conditions precedent

- 11 -

**EXECUTION COPY**

to this Agreement becoming Effective, the Settlement, and any obligation of Menasha to pay the Settlement Amount.

36.     The Settlement, and any obligation of the Releasors to give and the effectiveness of the Release, are expressly contingent and conditioned upon (i) closing of the WPPI Transaction no later than May 6, 2011, or such other extended date as may be agreed upon by the Parties, (ii) the sum of not less than $17,450,000 being deposited with the WPPI Transaction Escrow Agent in connection with the closing of the WPPI Transaction, (iii) Menasha providing notice to Class Counsel, as required in paragraph 35, of its receipt of notification from WPPI that the WPPI Transaction Contingencies (other than the Order Condition and Appeal Condition as defined in the WPPI Escrow Agreement) have been satisfied (or waived by WPPI), within 60 days of the Execution Date, or such other extended date as may be agreed upon by the Parties, and (iv) the WPPI Transaction Escrow Agent's irrevocable transfer of the full Settlement Amount (less the sum advanced by Menasha pursuant to paragraph 42) to the Settlement Escrow Agent for deposit into the Settlement Fund.  For the foregoing purposes, Menasha anticipates that the WPPI Transaction Contingencies (other than the Order Condition and Appeal Condition as defined in the WPPI Escrow Agreement) will be satisfied (or waived by WPPI) within approximately 60 days of the Execution Date; however, no assurance, representation or warranty can be or is being given that the WPPI Transaction Contingencies will be satisfied (or waived by WPPI) within such time.  Also for the foregoing purposes, Plaintiffs acknowledge that they have been provided a copy of, and Class Counsel has reviewed, the WPPI Transaction Agreement and a draft of the WPPI Transaction Escrow Agreement (and as to the latter Plaintiffs have also been provided a copy of, and Class Counsel has reviewed, relevant sections of a draft Closing Agreement between WPPI and Menasha that define the conditions to release of the Settlement

- 12 -

**EXECUTION COPY**

Amount by the WPPI Transaction Escrow Agent set forth in the WPPI Transaction Escrow Agreement, WPPI's rights to terminate the WPPI Transaction Escrow Agreement, and applicable deadlines with respect to both), and that such agreements set forth the WPPI Transaction Contingencies.  Menasha shall provide Class Counsel with an executed copy of the WPPI Transaction Escrow Agreement (and a final version of the sections of the Closing Agreement referenced above) upon execution, and in the event WPPI and Menasha amend or modify the WPPI Transaction Escrow Agreement, Menasha shall promptly provide Class Counsel with a copy of same; provided, however, that nothing herein shall be deemed a waiver of Plaintiffs' right to assert that any material changes to the terms of the WPPI Escrow Agreement reflected in such executed, amended or modified versions thereof constitute a breach of one or more terms of this Agreement.

**D.**     **The Settlement**

37.     Subject to the WPPI Transaction closing, and the WPPI Transaction Net Proceeds being transferred to the WPPI Transaction Escrow Agent in the sum of at least $17,300,000, Menasha shall, at the closing of the WPPI Transaction, ensure that sufficient additional funds are deposited with the WPPI Transaction Escrow Agent so that the sum of such additional funds and the WPPI Transaction Net Proceeds total at least $17,450,000, representing the Settlement Amount of $17,500,000 less $50,000 to be advanced by Menasha pursuant to paragraph 42 for the payment of interim expenses of administration of the Settlement.  Upon Menasha receiving notice from WPPI that the WPPI Transaction Contingencies (other than the Order Condition and Appeal Condition as defined in the WPPI Escrow Agreement) have been satisfied (or waived by WPPI), and subject to any other conditions set forth in paragraph 35, and Class Members' rights under paragraph 52, Menasha shall notify Class Counsel, and the Parties shall thereupon proceed

- 13 -

EXECUTION COPY

to seek entry of the Order and Final Judgment.  Upon entry of the Order and Final Judgment, Menasha shall provide written notification of same to WPPI.  Upon the Order and Final Judgment becoming Final, Menasha shall, pursuant to the terms of the WPPI Transaction Escrow Agreement, provide written notification to WPPI and the WPPI Transaction Escrow Agent that the Order and Final Judgment has become Final, and direct the WPPI Transaction Escrow Agent, in accordance with the terms of the WPPI Transaction Escrow Agreement, to transfer the $17,450,000 to the Settlement Escrow Agent for deposit into the Settlement Fund.  The Settlement Escrow Agent shall thereupon administer the Settlement Fund for the sole purpose of paying the Settlement Amount, less any Approved Disbursements, to the Settlement Class pursuant to the terms and conditions herein, the Order and Final Judgment, and any further direction of the Court.  In the event WPPI does not, in accordance with the terms of the WPPI Transaction Escrow Agreement, provide written confirmation to the WPPI Transaction Escrow Agent that all WPPI Transaction Contingencies have been satisfied, thereby authorizing the WPPI Transaction Escrow Agent to transfer the Settlement Amount to the Settlement Escrow Agent, Menasha shall make demand upon WPPI to comply with its obligation to authorize such transfer.  For the foregoing purposes, Plaintiffs, on their own behalf and on behalf of the Settlement Class, expressly acknowledge that the Settlement Amount shall not be deposited into the Settlement Fund, and full payment of the Settlement Amount (less the sum referred to in paragraph 42) shall not be made until after the Order and Final Judgment has been entered in the Action and becomes Final.

E.    **Notice and Court Approval**

38.    Within a reasonable period of time, but not more than thirty (30) days after the execution of this Agreement, Class Counsel shall apply to the Court by motion for an order,

- 14 -

**EXECUTION COPY**

substantially in the form of Exhibit A hereto ("Preliminary Approval Order"), that (i) certifies the Settlement Class, approves the appointment of Ice Miller LLP as Class Counsel, and preliminarily approves the Settlement as set forth in this Agreement, (ii) approves the retention of the Settlement Escrow Agent, (iii) approves the mailing of notice of the terms and conditions of the Settlement to Settlement Class Members, substantially in the form of Exhibit B hereto ("Class Notice"), and publication of summary notice, substantially in the form of Exhibit C hereto ("Publication Notice"), (iv) sets forth dates by which the Class Notice and Publication Notice shall be mailed and published, respectively, as well as dates by which Settlement Class Members must either file any objections to, or exercise any right to exclude themselves (opt-out) from the Settlement; provided, however, that Plaintiffs shall not be required to mail the Class Notice or publish the Publication Notice prior to the time Menasha notifies Class Counsel, as required in paragraph 35, of Menasha's receipt of notification from WPPI that the WPPI Transaction Contingencies (other than the Order Condition and Appeal Condition as defined in the WPPI Escrow Agreement) have been satisfied (or waived), and (v) schedule a final fairness hearing for purposes of approving the Settlement and entering an Order and Final Judgment, substantially in the form of Exhibit D herein.  Publication Notice shall be published twice in The Bond Buyer with an interval of two weeks between each publication.  Defendants shall support the motion, and shall cooperate with Class Counsel in seeking Court approval of, and in implementing the Settlement.  Subject to the Parties' rights under paragraph 55, the Parties waive any appeal from the Order and Final Judgment.

      39.    Within ten (10) days of the filing of the motion referenced above, Menasha shall provide notice of the Settlement, the motion and other court papers to federal and state government officials as required by 28 U.S.C. § 1715.  The notice to be provided by Menasha

- 15 -

shall be substantially in the form of Exhibit E hereto, inclusive of the attachments thereto. Pursuant to 28 U.S.C. § 1715(d), Menasha shall notify the Court upon expiration of ninety (90) days after the later of the dates on which the appropriate federal official and the appropriate state official are served with the notice required under 28 U.S.C. § 1715(b).

40.    Immediately following execution of this Agreement, Class Counsel shall notify the Court overseeing the Action and request, with the support of Defendants and on behalf of all Parties, that the Court stay the Action and hold all proceedings (other than those connected to the Settlement) in abeyance pending final disposition of the Settlement process.   Immediately following execution of this Agreement, Plaintiff American Bank shall notify and request the applicable Court to hold in abeyance, pending final disposition of this Action, the proceeding entitled *American Bank v. City of Menasha, Wisconsin, Debbie Galeazzi and Menasha Utilities*, Case No. 10-cv-0077-BR4, pending in the Winnebago County, Wisconsin Circuit Court, Branch 4. Upon the Effective Date, American Bank shall move the same Court to dismiss the foregoing matter, with prejudice, and without any award of damages, attorneys' fees, or costs.

**F.    Administration of the Settlement Fund and Claims Process**

41.    The Settlement Fund and the Claims Process shall be administered by Class Counsel in conjunction with the Settlement Escrow Agent, and any claims administrator appointed by Class Counsel and approved by the Court, pursuant to the terms of this Agreement, and any formula for distribution of the Settlement Amount approved by the Court, subject to the direction and jurisdiction of the Court.   Within a reasonable period of time following the Execution Date, Defendants shall supply the Settlement Escrow Agent and Class Counsel information to the best of their knowledge, which information may be obtained through third parties, regarding the identities and addresses of each purchaser, or current record holder, owner

- 16 -

**EXECUTION COPY**

or beneficial owner, of the 2005 BANs and 2006 BANs. Following the Effective Date, but within the time prescribed by the Court, the Settlement Fund, less any disbursements for Approved Disbursements, shall be distributed by the Settlement Escrow Agent to Members of the Settlement Class pursuant to any Claims Process and plan of distribution approved by the Court and administered by Class Counsel and any claims administrator.

42.     Before the Court enters the Order and Final Judgment approving this Agreement, disbursements for Plaintiffs' and Class Members' reasonable expenses actually and necessarily incurred (not including attorneys' fees) and associated with the following may be made from the Settlement Fund as directed by Class Counsel, for which purpose only the sum of $50,000, advanced against and deductible from the Settlement Amount, shall be deposited by Menasha with the Settlement Escrow Agent within sixty (60) days after the Execution Date: providing and publishing notice of the Settlement to the Settlement Class, administering the settlement and any claims process, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Agreement as addressed by paragraph 30 of this Agreement. Sums actually disbursed for such reasonable expenses shall not be refundable to Menasha in the event the Agreement is later disapproved, terminated, or otherwise fails to become effective. Under no circumstances shall the $50,000 sum be considered a limitation on the administrative expenses that may be incurred; provided, however, that in no event shall Defendants have any responsibility, financial obligation, or liability whatsoever with respect to any of the foregoing expenses, all of which shall be payable or paid solely from the Settlement Fund.

43.     After the Effective Date, Plaintiffs and Class Counsel shall have the right to seek, and Defendants shall not oppose, Court approval of payments from the Settlement Fund for distribution to Settlement Class Members or to reimburse Class Counsel for Approved

- 17 -

**EXECUTION COPY**

Disbursements.  In no event shall Defendants have any responsibility, financial obligation, or liability whatsoever with respect to the foregoing expenses, or the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, or any fees or expenses of the Settlement Escrow Agent, or any other Approved Disbursements, all of which shall be payable or paid solely from the Settlement Fund.

44.     Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all fees, costs and expenses incurred in this Action including, but not limited to, attorneys' fees, costs and expenses.  Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs and Class Counsel shall move for, and Defendants shall not oppose, the Court's approval of the payment of attorneys' fees, costs and expenses in the aggregate amount of $1,238,149, to be paid from the Settlement Fund.  Plaintiffs' and Class Counsel's motion for an award of attorneys' fees and costs shall be filed, and posted on the Settlement website, no later than 14 days prior to the final fairness hearing.  No attorneys' fees, costs or expenses, other than the reimbursement of any costs or expenses advanced by Class Counsel associated with providing notice of the Settlement to the Settlement Class, administering the Settlement, or in connection with taxation matters relating to the Settlement and this Agreement as addressed by paragraph 57 of this Agreement, if any, shall be paid to Class Counsel prior to the Effective Date.  In no event shall Defendants have any responsibility, financial obligation, or liability whatsoever for any costs, fees or expenses of Class Counsel, or any other of Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives, or any other Approved Disbursements, all of which shall be payable or paid solely from the Settlement Fund.

- 18 -

**EXECUTION COPY**

G.    **Releases**

45.    Upon the Effective Date, in consideration of delivery of the Settlement Amount to the Settlement Escrow Agent, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Releasees, and each of them, shall be completely released, acquitted, and forever discharged from any and all of the Released Claims, including the Unknown Claims, whether known or unknown, whether fraudulently concealed or otherwise concealed, or whether the damages or injury have fully accrued or will accrue in the future, whether class, individual or otherwise in nature, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way related to the 2005 BANs or 2006 BANs, or arising out of or resulting from conduct, including but not limited to any conduct or action or inaction related to or arising out of any alleged wrongdoing associated with the 2005 BANs or the 2006 BANs from 2005 through the end of the Class Period, including but not limited to any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, in the Action.

46.    The Releasors shall not, after the Effective Date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims.  In accordance with and to the extent required by 15 U.S.C. § 78u-4(f)(7)(A), upon the Effective Date the Releasees shall be released from all claims for contribution and indemnification brought by other persons.  The Releasors and Releasees shall jointly request that the Order and Final Judgment bar any and all future claims for contribution or indemnification arising out of any Released Claim belonging to the Class, including, but not limited to, any claim that is based upon, arises out of or relates to this Action or the transactions and occurrences referred to in the First Amended Complaint, (i) by any person or entity against any Releasee and (ii) by any Releasee against any person or

- 19 -

**EXECUTION COPY**

entity other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii), and providing that such claims for contribution and indemnification are permanently barred, extinguished, discharged, satisfied, and unenforceable.

47.     Upon the Effective Date, for good and valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all Released Claims by Releasors against any and all of the Releasees.  The failure of any member of the Settlement Class to exclude themselves from the Settlement by the Exclusion Date set by the Court, or to obtain any payment from the Settlement Fund, whether by any action or failure to act of the Settlement Escrow Agent or Class Counsel, or for any other reason, shall not affect the releases herein.  Nor shall the releases be affected in any way by any subsequent determination that the allocation of any payment to the Settlement Class from the Settlement Fund was unfair.  Upon the Effective Date, for good and valuable consideration, any claims against Releasors arising out of, relating to or in connection with the Action as against the Defendants are hereby released by the Releasees and their counsel, and they are permanently enjoined and barred from instituting, asserting or prosecuting any and all claims which the Releasees or their counsel or any of them, had, have or may in the future have against Releasors, arising out of relating to or in connection with the Action as against the  Defendants.  Class Counsel shall include in any notices and payments of Settlement Funds to Class Members contemplated by this Agreement a description of the claims being released, including the "Released Claims", and a copy of the Release provisions of this Agreement.

**H.     Class Members' Option to Exclude Themselves from the Settlement**

48.     Class Members shall be afforded the opportunity to exclude themselves from the Settlement by timely submitting an Exclusion Request.  Each Class Member submitting an

- 20 -

**EXECUTION COPY**

Exclusion Request shall be categorized as either a Class Member Holder Opt-out or Class Member Purchaser Opt-out.

49.     For each Class Member Holder Opt-out submitting an Exclusion Request, Class Counsel shall, with notice to Defendants' counsel, calculate, or otherwise determine in conjunction with the claims administrator or Defendants, the outstanding principal balance on the 2005 BAN or 2006 BAN held, owned, or beneficially owned by such Class Member Holder Opt-out.  The aggregate amount of such outstanding principal balances for all Class Member Holder Opt-outs shall be defined as the "Holder Opt-out Amount."

50.     Class Member Purchaser Opt-outs shall be required to certify in their Exclusion Request, subject to verification through any records or information reasonably available to the Parties, (i) the amount paid for the BAN purchased by them, together with the date of such purchase, and (ii) the amount received by them upon the subsequent sale of the BAN, together with the date of such sale and the identity of the purchaser.  No Exclusion Request submitted by a Class Member Purchaser Opt-out shall be valid or effective for the purpose of excluding him, her or itself from the Settlement and the Release herein, if it does not contain the foregoing certification.  For each such Exclusion Request, Class Counsel shall, with notice to Defendants' counsel, calculate the amount reflecting the difference between the purchase price and sale price of the BAN, as certified by the Class Member Purchaser Opt-out, and shall calculate the aggregate amount of such differences for all Class Member Purchaser Opt-outs who submit completed Exclusion Requests, which aggregate amount shall be defined as the "Purchaser Opt-out Amount."

51.     The Parties represent that they have not encouraged, directly or indirectly, and agree that they will not encourage, directly or indirectly, any potential Class Member to exercise

- 21 -

**EXECUTION COPY**

any right to exclude him, her or itself from the Settlement, and Defendants each further represent that they have not provided, and agree that, except with the prior consent of Class Counsel, they will not provide, assistance, advice, counsel or information to any potential Class Member related to that potential Class Member's right to request exclusion from the Settlement.

**I.**      **Termination Events and Effect of Termination**

52.      In the event, for whatever reason, any one or more of the conditions precedent described in paragraph 35 above is not satisfied (or waived), then, at Menasha's sole option and discretion, with notice to Class Counsel, this Agreement shall terminate and no longer be of any force or effect, and the Order and Final Judgment, if it has been entered, shall be vacated upon joint application of the Parties; provided, however, that in the event, for whatever reason, the WPPI Transaction Net Proceeds transferred by the WPPI Transaction Escrow to the Settlement Escrow Agent for deposit into the Settlement Fund are less than $17,300,000, then, at Plaintiffs' sole option and discretion, on their own behalf and on behalf of the Settlement Class, the Settlement may proceed pursuant to the existing terms and conditions in this Agreement, except that the Settlement Amount shall be reduced dollar for dollar by the amount of such net proceeds below $17,300,000; provided, further, however, that the $200,000 contribution by Menasha shall remain part of the Settlement Amount.

53.      In the event the Holder Opt-out Amount or the Purchaser Opt-out amount, either separately or in combination, represents five percent (5%) or more of the BANs' Outstanding Principal Balance, then, at Menasha's sole option and discretion, with notice to Class Counsel, this Agreement shall terminate and no longer be of any force or effect.  In the event and to the extent Class Members exclude themselves from the Settlement, but the Agreement is not terminated, then the Settlement Amount shall be reduced by a percentage equal to: the combined

- 22 -

**EXECUTION COPY**

total of the Holder Opt-out Amount and the Purchaser Opt-out Amount *divided by* the BANs' Outstanding Principal Balance.  The amount reflecting such percentage shall be retained in full by the WPPI Transaction Escrow Agent and, pursuant to the terms of the WPPI Transaction Escrow Agreement, shall be paid to Menasha.

54.    In the event, for whatever reason, any one or more of the conditions precedent described in paragraph 36 above is not satisfied (or waived), then, at Plaintiffs' sole option and discretion, with notice to Defendants' counsel, and subject to Plaintiffs' rights under paragraph 52, this Agreement shall terminate and no longer be of any force or effect, and the Order and Final Judgment, if it has been entered, shall be vacated upon joint application of the Parties.

55.    In the event the Court refuses to approve this Agreement or any material part hereof, or if such approval is reversed, modified in a material way or set aside on appeal, or if the Court does not approve an Order and Final Judgment substantially and materially in the form attached as Exhibit D hereto, or if the Court enters the Order and Final Judgment and appellate review is sought and, on such review, some material provision thereof is vacated, then each of Menasha and the Plaintiffs shall, at its or their sole option and discretion, and without incurring any liability to each other or to any other party to this Agreement, have the option to terminate this Agreement in its entirety.  A modification or reversal on appeal of any amount of Class Counsel's attorneys' fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation of the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment sufficient to trigger any right of termination of the Agreement.

56.    In the event the Agreement does not become Final and Effective or is terminated, the Parties will return in all respects to the status quo ante.  Defendants each enter this

- 23 -

**EXECUTION COPY**

Agreement without in any way acknowledging any fault, liability or wrongdoing of any kind. Nothing contained in this Agreement or any notice or other exhibit to this Agreement, including the Class definition and any reference to wrongdoing in this Agreement or in any notice or other exhibit to this Agreement, shall be construed in any way as an admission or evidence of any illegal conduct, fault, liability or wrongdoing of any kind by Defendants.  Further, Plaintiffs and Defendants agree that this Agreement, whether or not it is finally approved and whether or not terminated or rescinded, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by any defendant, or of the truth of any of the claims or allegations contained in the First Amended Complaint or any other pleading filed by Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action, proceeding or context.

**J.**     **Taxes**

57.     The Settlement Fund shall be established and maintained at all times as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1, as amended.  Class Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund.  All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund.  Defendants shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility

- 24 -

**EXECUTION COPY**

to pay tax on any income earned by the Settlement Fund or pay any taxes on Settlement Fund, unless the Settlement is not consummated. In the event the Settlement is not consummated, Menasha shall be responsible for the payment of all taxes on said income that have not already been paid out of the Settlement Fund as provided in this Agreement. However, Defendants shall not be responsible for paying any interest or penalties relating to tax filings made by Class Counsel or tax payments owed as a result of those filings or the lack of timely filing thereof.

## K.   Miscellaneous

58.   The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any dispute arising out of or relating to this Agreement, or the interpretation, applicability, or specific enforcement of its terms, which cannot be resolved by negotiation and agreement by Plaintiffs and Defendants.

59.   This Agreement constitutes the entire agreement between Plaintiffs and Defendants pertaining to the Settlement of the Action and supersedes any and all prior and contemporaneous undertakings in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and Defendants, and approved by the Court.

60.   This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees. Without limiting the generality of the foregoing and subject to the Effective Date occurring: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Class Members and Releasors, and (b) each and every covenant and agreement made herein by a Defendant shall be binding upon that Defendant's Releasees.

61.   This Agreement may be executed in counterparts by Plaintiffs and Defendants, and a digital or facsimile signature shall be deemed an original for purposes of this Agreement.

**EXECUTION COPY**

62.     Neither Defendants, Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of an Agreement.

63.     Nothing expressed or implied in this Agreement is intended to, shall, or shall be construed to, confer upon or give any person or entity other than Plaintiffs, Settlement Class Members, Class Counsel, Releasors, Releasees any right or remedy under or by reason of this Agreement.

64.     Where this Agreement requires any party to provide notice to any other party, such notice, communication, or document shall be provided by letter sent by same day facsimile transmission or electronic mail transmission with confirmation by overnight delivery or hand delivery.

65.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

66.     This Agreement shall be interpreted and construed in accordance with the substantive laws of the State of Wisconsin, and any dispute or claims arising under or related to the terms or provisions of this Agreement, whether styled in contract, tort or otherwise, shall be governed by the substantive laws of the State of Wisconsin without reference to choice of law or conflict of law principles.

**Remainder of Page Intentionally Left Blank**

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date set forth above.

**THE LAFAYETTE LIFE INSURANCE COMPANY**

By: _____ Jerry B. Stillwell
Its: _____President + CEO_____
Date: _____March 25, 2011_____

By: _____ William F. Olds
Its: ___Sr. VP - Projects + Planning___
Date: _____March 25, 2011_____

Attested By: ___Kimberly Meyer___ Kimberly Meyer
Title: ___V.P. - Human Resources + Ass't Secy___
Date: _____March 25, 2011_____


**MERCY RIDGE, INC.**

By: _____
Name: _____
Title: _____
Date: _____


**AMERICAN BANK, A NATIONAL ASSOCIATION**

By: _____
Name: _____
Title: _____
Date: _____

**ICE MILLER LLP**

_____
Michael A. Wukmer
One American Square
Suite 2900
Indianapolis, IN 46282-0200

*Counsel for Plaintiffs and Class Counsel*


- 27 -

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date set forth above.

**THE LAFAYETTE LIFE INSURANCE COMPANY**

By: _____
Its: _____
Date: _____

By: _____
Its: _____
Date: _____

Attested By: _____
Title: _____
Date: _____

**MERCY RIDGE, INC.**

By: _____
Name: _John a. Frye___
Title: _Treasurer___
Date: _3/25/11___

**AMERICAN BANK, A NATIONAL ASSOCIATION**

By: _____
Name: _____
Title: _____
Date: _____

**ICE MILLER LLP**

_____
Michael A. Wukmer
One American Square
Suite 2900
Indianapolis, IN 46282-0200

*Counsel for Plaintiffs and Class Counsel*

- 27 -

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date set forth above.

**THE LAFAYETTE LIFE INSURANCE COMPANY**

By: _____
Its: _____
Date: _____

By: _____
Its: _____
Date: _____

Attested By: _____
Title: _____
Date: _____

**MERCY RIDGE, INC.**

By: _____
Name: _____
Title: _____
Date: _____

**AMERICAN BANK, A NATIONAL ASSOCIATION**

By: _____ *Pres*
Name: *James R. Chatterton*
Title: *President*
Date: *3-25-2011*

**ICE MILLER LLP**

_____
Michael A. Wukmer
One American Square
Suite 2900
Indianapolis, IN  46282-0200

*Counsel for Plaintiffs and Class Counsel*

- 27 -

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution

Date set forth above.

**THE LAFAYETTE LIFE INSURANCE COMPANY**

By: _____
Its: _____
Date: _____

By: _____
Its: _____
Date: _____

Attested By: _____
Title: _____
Date: _____

**MERCY RIDGE, INC.**

By: _____
Name: _____
Title: _____
Date: _____

**AMERICAN BANK, A NATIONAL ASSOCIATION**

By: _____
Name: _____
Title: _____
Date: _____

ICE MILLER LLP

Michael A. Wukmer
One American Square
Suite 2900
Indianapolis, IN  46282-0200

*Counsel for Plaintiffs and Class Counsel*

- 27 -

**EXECUTION COPY**

CITY OF MENASHA, WISCONSIN

By: _____
Name:  Donald Merkes
Title:  Mayor
Date:  *25 MARCH 2011*

By: *Deborah A. Galeazzi*
Name:  Deborah A. Galeazzi
Title:  City Clerk
Date:  *3-25-11*

HUNTON & WILLIAMS LLP

_____
Edward J. Fuhr
Joseph J. Saltarelli
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219

BARNES & THORNBURG LLP
Brian E. Casey
Alice J. Springer
600 1st Source Bank Center
Riverfront Plaza, East Tower

*Counsel for City of Menasha, Wisconsin*


RBC CAPITAL MARKETS, LLC (f/k/a RBC Capital Markets Corp.)

By: _____
Name: _____
Title: _____
Date: _____

KATTEN MUCHIN ROSENMAN LLP

_____
Christian T. Kemnitz
Brian J. Poronsky
525 West Monroe St.
Chicago, IL 60661-3693

*Counsel for RBC Capital Markets, LLC (f/k/a RBC Capital Markets Corp.)*

- 28 -

EXECUTION COPY

**CITY OF MENASHA, WISCONSIN**

By: _____
Name: _____
Title:   Mayor

By: _____
Name: _____
Title:   City Clerk


**HUNTON & WILLIAMS LLP**

_____
Edward J. Fuhr
Joseph J. Saltarelli
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia  23219

**BARNES & THORNBURG LLP**
Brian E. Casey
Alice J. Springer
600 1st Source Bank Center
Riverfront Plaza, East Tower

*Counsel for City of Menasha, Wisconsin*


**RBC CAPITAL MARKETS, LLC (f/k/a RBC Capital Markets Corp.)**

By: _____
Name:  Ralph DeSena
Title:   Director & Senior Counsel


**KATTEN MUCHIN ROSENMAN LLP**

_____
Christian T. Kemnitz
Brian J. Poronsky
525 West Monroe St.
Chicago, IL  60661-3693

*Counsel for RBC Capital Markets, LLC (f/k/a RBC Capital Markets Corp.)*