UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

```
-------------------------------------------------------------------X
THE LAFAYETTE LIFE INSURANCE COMPANY,         :
MERCY RIDGE, INC., AMERICAN BANK, and all     :
others similarly situated,                    :
                                              :
                         Plaintiffs,          :
                                              :
          - against -                         :   Cause No. 4:09-CV-64-TLS-APR
                                              :
CITY OF MENASHA, WISCONSIN, a municipal       :
corporation, MENASHA UTILITIES, MENASHA       :
STEAM UTILITY, and RBC CAPITAL MARKETS        :
CORP. f/k/a RBC DAIN RAUSCHER, INC.,          :
                                              :
                         Defendants.          :
-------------------------------------------------------------------X
```

**ORDER GRANTING CLASS PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

This matter came before the Court on the motion of the plaintiff class certified by this Court's Order Preliminarily Approving Settlement [Doc. No. 145] (Class Plaintiffs), by settlement Class Counsel (Class Counsel)[1] pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) for an award of attorneys' fees and reimbursement of costs and expenses incurred by certain members of the plaintiff class and Class Counsel in prosecuting this action. For the reasons described below, the Court now **grants** Class Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses and directs, in accordance with the Settlement

---

[1] The term Class Counsel refers to Ice Miller LLP.

Agreement,[2] that Class Counsel be paid a total award of $1,238,149 for attorneys' fees, costs and expenses.

Class Plaintiffs' claims in this litigation were based upon alleged violations of federal and state securities laws, as well as certain State-law statutory and common law obligations, which plaintiffs contend were committed by the defendants in connection with their sale and issuance of certain taxable steam utility revenue bond anticipation notes in 2005 and 2006 (the "BANS"). Plaintiffs allege that the defendants, the City of Menasha, Wisconsin, Menasha Utilities and Menasha Steam Utility (collectively, the "Menasha Defendants"), and the BANS' underwriter, RBC Capital Markets LLC ("RBC"), made misrepresentations of material fact and material omissions which resulted in class members' substantial loss of their investment in the BANS.[3]

In the Litigation, Class Counsel initially represented a group of noteholders, including the three named plaintiffs, The Lafayette Life Insurance Company, Mercy Ridge, Inc. and American Bank. Wukmer Dec., ¶ 2.[4] At the time of Class Counsel's engagement, in September 2009, it

---

[2] All capitalized terms not otherwise specifically defined herein shall have the meanings given to them in the Settlement Agreement.

[3] The Settlement Agreement provides that Defendants deny liability and nothing in the Settlement or associated documents "shall be construed in any way as an admission or evidence of any illegal conduct, fault, liability or wrongdoing of any kind by Defendants." Settlement Agreement, ¶ 56. Accordingly, nothing in this Order, or otherwise, shall be construed as an admission or finding of any illegal conduct, fault, liability or wrongdoing of any kind by any of the Defendants.

[4] Apart from the three named plaintiffs, the larger noteholder group represented by Class Counsel included the following: Bank of Montgomery, Bay Bank, California Dental Association, Brown Advisory (formerly Cavanaugh Capital Management), Central Savings Bank, Choice One Bank, Heritage Investors, Hillview Capital, Forward Financial Bank (formerly Marshfield Bank), Mid-South Public Communications Foundation, Northpointe Bank, Range Bank, Ross, Sinclair & Associates, Ruth State Bank and Upper Peninsula State Bank. Wukmer Dec. ¶ 3. Additionally, R.W. Baird & Co. and Wasmer Schroeder & Co. each advanced a small proportion of attorneys' fees and expenses before removing themselves from this group of noteholders. Wukmer Dec., ¶ 3.

was unclear whether this case would proceed as a class action and, if so, whether counsel would be appointed as Lead Counsel under the Private Securities Litigation Reform Act (PSLRA). Counsel's fee agreement with the individual noteholders was thus based on hourly rates at which the clients would be charged for various attorneys' services in connection with the Litigation. Wukmer Dec., ¶ 2.  Counsel's agreement with the individual noteholder group provided for advancement of attorneys' fees and expenses on an ongoing *pro rata* basis proportionate to the amount of each client's investment in the BANS.  *Id.*, Exhibit A.

Counsel's fee arrangement with these individual noteholders also contemplated that the clients would be reimbursed by Class Counsel at the end of the litigation if a class was certified and payment of attorneys' fees and expenses was available out of a common fund.  *Id.*  On the basis of the Declaration of Lead Counsel, Michael A. Wukmer, filed herein, the Court finds it is undisputed that the rates reflected in counsel's engagement agreement are fair market rates for the services rendered in light of the scale and complexity of the Litigation and prevailing rates are comparable work in Indiana.  Wukmer Dec., ¶ 2.

The named plaintiffs' amended complaint sought class certification and by Order dated May 17, 2010 [Doc. No. 62], Michael A. Wukmer was appointed Lead Counsel on behalf of any class under the PSLRA.  The ensuing Litigation proved to be complex, with defendants filing separate motions to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Additionally, Class Counsel prosecuted litigation under the public records statute of Wisconsin, seeking documents from defendant City of Menasha.  *See American Bank v. City of Menasha*, 627 F.3d 261 (7th Cir. 2010).  As reflected in the time entries submitted with Mr. Wukmer's declaration, defendants' Motions to Dismiss, the public records act proceedings and other

proceedings described in counsel's time entry narratives, required extensive work by Class Counsel. Wukmer Dec. ¶¶ 4-5, Ex. B-C.

Ultimately, the parties entered into the March 28, 2011 Settlement Agreement. The Settlement was preliminarily approved by this Court by Order dated August 19, 2011 [Doc. No. 145]. Class Counsel's time entries also reflect substantial time devoted to negotiation of the Settlement Agreement and preparation of court filings associated with the Settlement. *Id.* Ex. B. In the Preliminary Approval Order, the Court certified a settlement class consisting of purchasers or holders of the BANS. The Settlement Agreement provides for a Settlement Amount of $17.5 million (subject to certain Approved Disbursements, as defined in the Settlement Agreement) to be paid into a Settlement Fund and administered for the benefit of the Settlement Class by Class Counsel. The Settlement Agreement also provides that "plaintiffs and Class Counsel shall move for, and defendants shall not oppose, the Court's approval of the payment of attorneys' fees, costs and expenses in the aggregate amount of $1,238,149 to be paid from the Settlement Fund." Settlement Agreement, ¶ 44.

The Court finds Class Counsel's unopposed request for an award of attorneys' fees in the amount of $1,238,149 to be fair and reasonable in light of the benefits provided to Class Members under the Settlement; the litigation efforts of Class Counsel to date; compensation levels determined ex ante in the relevant market for such legal services; and Class Counsel's reasonable hourly rates multiplied by hours spent on the case, using the "lodestar" method of analysis. Class Counsel's request for attorneys' fees in the amount of $1,238,149 is also reasonable as a percentage of the common fund – 7% of the $17.5 million common fund – given the complexity and scope of this litigation. "In the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20% to 33% range." 4 *Newberg on*

*Class Actions (4th)*, § 14:6, p. 550 (2002).  Having received notice in accordance with the Court's preliminary approval order, no member of the Settlement Class has objected to the fee award requested herein.  Wukmer Dec., ¶ 7.

Under the common fund doctrine, Class Counsel are entitled to compensation for their efforts in creating a settlement fund benefitting class members.  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992), citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

> When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund.  In such a case, the defendant typically pays a specific sum into the court, in exchange for a release of its liability.  The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class.

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("*Florin I*") (citing *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)), *cert. denied*, 493 U.S. 810 (1989).  The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share its costs."  *Skelton*, 860 F.2d at 252.

Here, Class Counsel have created a Settlement Fund in the amount of $17,500,000.  Distribution of the Settlement Fund for the benefit of Settlement Class members is subject to the Court's final approval, and the Settlement provides for no direct payment of attorneys' fees or expenses by the Defendants.  Wukmer Dec., ¶ 3.  Instead, pursuant to Fed.R.Civ.P. 23(h) and 54(d)(2), Class Counsel and Plaintiffs may seek Court approval for the payment of attorneys' fees and reimbursement of costs and expenses to be paid out of the Settlement Fund.  Settlement Agreement, ¶44.  The  Settlement Fund is a "common fund" established for the benefit of a plaintiff class.  The creation of this fund by Class Counsel justifies application of the common fund doctrine to award attorneys' fees and reimburse expenses.

The Seventh Circuit has repeatedly held that the goal of a district court when awarding reasonable attorneys' fees is to estimate what the lawyers "would have received in an arms-length negotiation." *Cont'l Ill. Sec. Litig.*, 962 F.2d at 572. The Court of Appeals recently summarized this long-standing rule:

> In deciding fee levels in common fund cases, we have consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."

*Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). As stated in *Cont'l Ill. Sec. Litig.*, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Cont'l Ill. Sec. Litig.*, 962 F.2d at 568 ("district judge … thought he knew the value of the class lawyers' legal services better than the market did").

In making this determination, "a district court may use the lodestar method, the percentage of recovery method, or some combination of the two." *Florin v. Nationsbank of Georgia, NA.*, 60 F.3d 1245, 1247 n.2 (7th Cir. 1995) ("*Florin II*") (citing *Florin I*, 34 F.3d at 565-66); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). In the present case, Class Counsel and the certain plaintiffs – including lead plaintiffs Lafayette Life Insurance Co., Mercy Ridge, Inc. and American Bank – negotiated at arm's-length a written fee agreement at the outset of this litigation. These entities are sophisticated parties, and this Court has already found lead plaintiffs adequate for their role, and the terms of the fee agreement between them and Class Counsel reflect a market rate for counsel's services in this matter. Wukmer Dec. ¶ 2, Ex. A. Specifically, the Fee Agreement provides for hourly rates between $470 and $205 (depending upon the experience of the billing attorney or other professional) and the advancement by certain

plaintiffs of reasonable litigation expenses. Pursuant to the Fee Agreement, attorneys' fees in this case were calculated on an hourly/lodestar basis rather than the percentage-of-fund basis.

In determining the "market price" for legal services, the Seventh Circuit has instructed district courts to "balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of class members in the fund." *Florin I*, 34 F.3d at 565 (citation omitted). "A court must assess the riskiness of the litigation by measuring the probability of success of this type of case *at the outset* of the litigation." *Id*. (citations omitted; emphasis original). By consulting the market for legal services, in light of the attorney's risk of nonrecovery, the court may estimate the "reasonable percentage" that the parties would have agreed to as a fee at the outset of the litigation. *Sutton*, 504 F.3d at 693.

In *Synthroid I*, a securities fraud class action, the Seventh Circuit offered some guidelines to district courts determining a reasonable fee using the "market approach." First, the court suggested an analysis of actual agreements to determine "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 719-20. Second, the court suggested that district courts could consider data from securities suits where large investors have chosen to hire counsel up front. *Id*. at 720. In doing so, the court recognized that such data had become "widely available" following changes in securities law practices. *Id*. Third, the court suggested that district courts could find guidance from the result of lead counsel "auctions" common in securities practice. *Id*. The court also stated that "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Id*. at 721.

The award of attorneys' fees requested by Class Counsel accurately reflects "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692; Wukmer Dec. ¶ 2.  Each of the factors identified by the Seventh Circuit weighs in favor of Class Counsel's requested attorneys' fees.

As observed by the Seventh Circuit, the terms of the Plaintiffs' actual agreements are directly relevant to "approximating the terms that would have been agreed to *ex ante*." *Id*. at 719.  The actual terms agreed to by the parties at the outset of this litigation are evidence of "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692.  Moreover, counsel's opinion, based on experience and familiarity with the market for legal services in cases like this one, is further evidence of the market rate for the type of services provided in this case.  *See*, *e.g.*, *Berger v. Xerox Corp. Ret. Inc. Guar. Pl.*, 2004 WL 287902,*2-3 (S.D. Ill.) (relying on Class Counsel's affidavit to support conclusion that market rate for services was contingent rate of 29% or higher); Wukmer Dec. 2.  The attorneys' fees requested by Class Counsel are supported by their actual agreement with Plaintiffs and Class Counsel's opinion regarding customary market rates for matters of this type.  Wukmer Dec. ¶ 2.

In this case, application of the hourly rates prescribed by the ex ante, written fee agreement produces a total fee request capped by the Settlement Agreement at $1,238,149.[5]  A copy of the time entries detailing counsel's work was submitted to the Court.  Wukmer Dec. Ex. B-C.  Given the $17.5 million common fund produced by Class Counsel's work, this request amounts to 7% of the common fund.  Application of the *Synthroid* factors is straightforward.

---

[5] In fact, the evidence reflects that Class Counsel incurred total fees and expenses of $1,272,082.49, as of October 31, 2011.  The Settlement Agreement, however, caps any award of fees and expenses at $1,238,149 and Class Counsel have limited their requests accordingly.

The best evidence of market rates is the parties' express, ex ante fee agreement at the base of this request. With respect to the first of the *Synthroid* factors, there is no dispute that lead plaintiffs and Class Counsel negotiated a normal, market rate of compensation at the outset of this litigation. Wukmer Dec. ¶ 2.

In applying the second and third *Synthroid* factors, data from other securities cases (including cases where "auctions" for Class Counsel status occurred) indicates that the 7% award requested here is at the low end of the compensation scale approved by other courts. *See, e.g., 4 Newberg on Class Actions (4th)*, § 14:6, p. 550 (2002) ("In the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20% to 33% range)"; *Synthroid*, 264 F.3d at 719-21 (collecting the results of "auction" cases which approved fee requests amounting to between 17% and 30% of the common fund produced); *Goldberger v. Integrated Resources Inc.*, 209 F.3d 43, 51-52 (2d Cir. 2000) (identifying a 25% fee award as the "benchmark" in securities class actions); *In re WorldCom Inc. Securities Litigation*, 388 F.Supp.2d 319, 356-57 (S.D. N.Y. 2005) (collecting cases citing awards of between 7% and 17% approved in securities class actions); *In re Telik Inc. Securities Litigation*, 576 F.Supp. 570, 580-81 (S.D. N.Y. 2008) (collecting cases approving awards of up to 25% of the common fund). The *Synthoid* factors thus favor the fee award requested by Class Counsel.

Class Counsel have requested that the Court also approve an award from the Settlement Fund (also subject to the total cap of $1,238,149 on all fees, costs and expenses) to reimburse Plaintiffs and Class Counsel for litigation expenses incurred. Class Counsel has incurred expenses in the amount of $118,809.09 in the prosecution of this matter as of October 31, 2011. Wukmer Dec., ¶ 8, Ex. C. Reimbursement of expenses from the Settlement Fund is

contemplated by Class Counsel's agreement with the Plaintiffs, *Id*., ¶ 3, and by the Settlement Agreement (¶ 44).

As with attorneys' fees, the Seventh Circuit directs district courts to take a market-based approach when considering requests for reimbursement of litigation expenses. *Synthroid I*, 264 F.3d at 722. Both the amount of specific expenses incurred, and "the amount of itemization and detail required," should be assessed by reference to the private market. *Id. See also, Cont'l Ill. Sec. Litig.*, 962 F.2d at 570 (court should allow reimbursement of expenses at market rates). As set forth in the Wukmer Declaration, Class Counsel's request for reimbursement is based upon categories of expenses that are customarily charged to clients in the market for legal services, and include rates and amounts that are customary in the market. Wukmer Dec., ¶ 2, Ex. C. These are expenses that are normally recovered from a settlement fund net of attorneys' fees, which is the arrangement set forth in Class Counsel's agreements with the Plaintiffs. Wukmer Dec., ¶ 2, Ex. A. Class Counsel's request for reimbursement of expenses is therefore reasonable and consistent with market rates and practices, and is approved.

Certain class members have previously entered into fee agreements with Class Counsel, and they have advanced a portion of Class Counsel's fees and expenses on an ongoing basis during the pendency of this litigation. Specifically, Class Counsel's attorneys' fees and expenses have been advanced on an ongoing basis by the three named plaintiffs and a group of additional noteholders or noteholder representatives.[6] Accordingly, since fees and expenses should be paid class-wide on a *pro rata* basis, in proportion to each class member's holdings of the BANS, this group of individual noteholders has overpaid relative to other Settlement Class Members and must be reimbursed as a part of distribution of the Settlement Fund. Wukmer Dec. ¶ 9.

---

[6] These class members are as identified in footnote 4 above.

With respect to disbursements of attorneys' fees and expenses, Class Counsel proposes, and the Court **approves and orders**, the following methodology: (1) After the Effective Date of the Settlement Agreement, and completion of claims processing, upon a Motion for Distribution of the Settlement Fund, the amount of the fee/expense award granted herein, $1,238,149, shall be set aside by the Claims Administrator and paid in a lump sum directly to Class Counsel; (2) Class Counsel reconcile the payments that have been advanced by the named plaintiffs and the other members of the paying noteholder group (as identified in footnote 4 above) and issue checks (or wire) to them in the amount of their advanced payments to Class Counsel of attorneys' fees, costs and expenses; (3) the balance of the Settlement Fund then shall be distributed to members of the Settlement Class, in accordance with this Court's Order of August 18, 2011 [Doc. No. 144], without further adjustment for attorneys' fees, costs or expenses.

**SO ORDERED on December 1, 2011.**

s/Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

I/2694366.1